**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| **Plaintiff**, | ) | Cause no. 4:19-CR-00979 |
| | ) | |
| vs. | ) | |
| | ) | |
| **DAVION STEVENS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Defendant Davion Stevens, by and through below signed counsel, submits this sentencing memorandum to assist the Court in instituting a sentence that is "sufficient, but not greater than necessary" to achieve the statutory objectives of punishment. 18 U.S.C. § 3553(a). In this case, a sentence of 33 months in the Bureau of Prisons followed by a term of supervised release is "sufficient, but not greater than necessary." *Id.*

**I.   Procedural History**

On November 21, 2019, Mr. Stevens was charged by indictment with one count of Felon in Possession of a Firearm in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(2). On December 2, 2020, Mr. Stevens and the United States Attorney entered into a signed plea agreement. Under that agreement, the parties agreed that the base offense level for this offense would be either 20, 22, or 26 points and that the specific offense characteristic of possessing the firearm "in connection with another felony offense" would not apply. The parties also agreed that Mr. Stevens would receive a downward adjustment for acceptance of responsibility. The parties estimated in the plea agreement that Mr. Stevens would therefore have a base offense level of 17, 19 or 23, depending upon the findings of the Presentence Report. They also agreed

that either party may request a sentence above or below the Sentencing Guidelines range. The parties agree that the Court is neither bound by their recommendation nor the Sentencing Guidelines.

## II. Mr. Stevens' Personal History and Characteristics

Mr. Stevens was born to Danielle Spruill when she was only sixteen years old. Within three years, he was put into foster care when his mother was incarcerated for felony Abuse of A Child. While Ms. Spruill is not known to have had a formal psychiatric diagnosis, her mother reports that she told her "the devil wants me to kill you" and that she was involuntarily committed for mental health treatment. Mr. Stevens remembers his mother brutalizing him and his brother as some of his earliest memories. As a toddler, he reports being left alone for days on end with his infant brother. His grandmother, Linda Eddington, recalls multiple times to have found them in their house, empty, without adult supervision, and locked in a room. When Mr. Stevens's mother would finally return, upset with her children for "snitching" on her, she would beat them as punishment, so badly that at one point Mr. Stevens' brother was hospitalized. After this hospitalization, Ms. Spruill was criminally charged and pleaded guilty to felony Abuse of A Child. Mr. Stevens saw his mother again after her release from prison when he was six years old. Ms. Spruill surprised Mr. Stevens at daycare and treated him to a mother and son afternoon, complete with McDonalds. This would be last time he saw his mother. That week her body was found, dead at twenty-one years old.

During the time his mother was in prison, Mr. Stevens was separated from his brother and grandmother and put into foster care. This family split only added chaos to Mr. Steven's unstable existence. Now alone with an unfamiliar family, he again experienced physical abuse, this time

as punishment for wetting the bed. Upon learning about the harsh treatment he was subject to in his placement, Ms. Eddington completed the requisite training needed to legally adopt her grandson and, with the help of her two sons, she took on the task of raising Mr. Stevens. While living with his grandmother, he was once again exposed to tragedy. His uncle, who was Mr. Stevens' father figure, was shot in the head outside their home. Rushing to help, he watched his uncle die and heard him speak his last words.

Expectedly, Mr. Stevens was profoundly impacted by the experiences of abuse, neglect, and loss so early in his development. In school, his family reports, he had an Individualized Education Program (IEP) and was diagnosed with Attention Deficit Hyperactivity Disorder. Mr. Stevens was prescribed a stimulant, which he took despite him reporting that it only increased his symptoms. It is now more understood that childhood traumatic stress often mimics and has overlapping symptoms of ADHD, leading to a high risk of misdiagnosis.[1] This is particularly true when a child has been exposed to m multiple traumatic events.[2] At fourteen, Mr. Stevens attended school through the Department of Youth Services at Hogan Street, where he stayed until he was sixteen years old. Mr. Stevens enjoyed his time at Hogan Street and says there he learned how to cope with his overwhelming emotions and "talk things out".

Unfortunately, Mr. Stevens failed his High School Equivalency Test (HiSET) at Hogan Street and returned to his grandmother's house. The crisis of gun violence again touched Mr. Stevens' life—while playing in the front yard with a neighborhood friend at sixteen years old,

---

[1] Siegfried, C.B., Blackshear, K., National Child Traumatic Stress Network, with assistance from the National Resource Center on ADHD:  A Program of Children and Adults with Attention Deficit/Hyperactivity Disorder ((IHADD). 2016)
[2] Is it ADHD or child traumatic stress?  A Guide for Clinicians.  Los Angeles, CA & Durham, NC; National Center for Child Traumatic Stress

Mr. Stevens' friend was struck by a bullet. He survived due to the first aid care that Mr. Stevens administered while waiting for first responders to arrive. Already hypervigilant from his past experiences of trauma, this incident solidified to Mr. Stevens that danger was unpredictable and always close by.

There were some bright spots in Mr. Stevens' life.  He reconnected with his father when he was eighteen years old. Like Mr. Stevens, his father had Type 1 Diabetes, and as a result was a double amputee who was wheelchair bound. While getting to know each other, Mr. Stevens made sure his father made it to all his doctor's appointments, administered his insulin, and helped him with hygiene and going to the bathroom. Mr. Stevens feels grateful for this time together since his father passed away one year later.  The other bright spots in his life are his two sons, Javion and Jermere, both under the age of two. Mr. Stevens reports wanting to be successful for them, notably by giving them a sense of stability that he didn't have as a child. He "wants to be a working man" because he believes this is the quickest way to stability.  Once he's achieved that, he wants to become a social worker so that he can work with kids who share his experiences of trauma.

### III.  Offense Conduct

On August 11, 2019, the Berkeley, Missouri Police Department responded to a disturbance at a home where Mr. Stevens and his girlfriend were staying.  Mr. Stevens left the home prior to the arrival of the officers, and occupants of the home told police that he had struck them with a pistol.  However, the officers noted that neither of the alleged assault victims bore any signs of assault.  Mr. Stevens car was pulled over by the police, and he exited the vehicle at the instruction of the officers.  The officers found a loaded Beretta pistol inside the vehicle.

### IV.  Legal Standard

Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of punishment. 18 U.S.C § 3553(a). The United States Sentencing Guidelines are not mandatory, but merely advisory. *United States v. Booker*, 543 U.S. 220, 245 (2005). The Eight Circuit established that a district court must begin all sentencing determinations by calculating the term of imprisonment per the sentencing guidelines. *United States v. Lehmann*, 513 F.3d 805, 808 (8th Cir. 2008); *Gall v. United States*, 522 U.S. 38, 49 (2007).

Next, the court should decide if any applicable Guideline provisions permit a traditional "departure" from the recommended sentencing range. The term "departure" is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines. The calculation of the initial advisory Guideline range, along with applicable departures, results in a "final advisory Guidelines sentencing range." Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a variance outside the final advisory Guidelines sentencing range. As opposed to a "departure", a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a). Every sentencing determination "must make an individualized assessment based on the present facts." *Gall,* 522 U.S. at 50. This individualized assessment is undertaken pursuant to the long-standing principle that "the punishment should fit the offender and not merely the crime". *Pepper v. United States*, 562 U.S. 476, 487-88 (2011).

### V.  Guideline Computations

According to the Presentence Investigation Report (PSR) prepared by the U.S. Probation Office, Mr. Stevens has a total criminal history score of 3, putting him in category II of the

Sentencing Guideline categories. His total offense level was deemed to be a 19. Pursuant to the Sentencing Guidelines, Mr. Stevens' guideline imprisonment range is between 33 months and 41 months.

## VI. A sentence of 33 months is appropriate for Mr. Stevens' offense

In Mr. Stevens' PSR, the U.S. Probation Officer identifies multiple factors under 18 U.S.C. § 3553(a) that may warrant a downward variance. Specifically, she refers to Mr. Stevens' placement in a foster home as a child, the early death of both of his parents and his diagnosis of Diabetes Type I.  The PSR writer also notes that a variance may be appropriate due to the amount of violence Mr. Stevens witnessed at a young age.  Although Mr. Stevens is not asking for a variance, he asks that the Court consider these factors in determining the sentence that Mr. Stevens is to receive.

## VII. Conclusion

Mr. Stevens therefore asks this Court to sentence him to 33 months in the Bureau of Prisons followed by a term of supervised release.

Respectfully submitted,

/s/ Susan McGraugh
Susan McGraugh #37430MO
Attorney for Defendant
Saint Louis University Law Clinic
100 N. Tucker Blvd.
 St. Louis, MO  63101
(314) 977-2778

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.

_____/sm/_____